[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the Plaintiff husband against the Defendant wife for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on December 20, 1953. There are no minor children issue of this marriage.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders, and trial memoranda. Based upon the evidence, the court makes the following findings. These findings are greatly affected by the total lack of credibility of the Plaintiff. The Plaintiff, in response to discovery requests, answers to deposition questions and testimony at trial, repeatedly, consistently, and intentionally misrepresented the state of his finances and of his business ventures. He did so in an effort to mislead the Defendant, her counsel and the court in the hope that he could affect, to his benefit, the outcome of these proceedings.
This action was commenced on May 17, 1996. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving on this ground.
The Plaintiff husband is sixty-six years old and in good health. Me is a college graduate with an engineering degree. He started, developed, operated and is the sole owner of a successful business, Applied Magnetics, Inc., which manufactures parts for use in military aircraft. Though he claimed that this business shut down just prior to trial, in fact, this corporation continues to operate, ship orders, solicit bids for new business and collect payments from its customers. For some amount of time during the trial, while the Plaintiff was in court, operations were suspended. CT Page 11518
The Plaintiff and Defendant owned jointly the marital residence located at 11 Skyview Drive, Stamford, Connecticut. At one point, this property was transferred to the parties' son, David, to be held for their benefit and to be returned on their request. In 1995 or 1996, Attorney David Scaizi was hired to prepare a deed for its reconveyance. When the Plaintiff commenced this action, the Defendant discovered that the deed had not been recorded. She retrieved the deed and has since retained it in her possession. No financial equity was ever transferred to the parties' son, and no gift was contemplated or completed by the conveyance to him or by the deed back to them. The outstanding deed was given for the sole purpose of changing the identity of ownership, without any change in beneficial ownership.
Applied Magnetic, Inc.'s (hereinafter "Applied") tax returns showed losses for the last four to five years. In calculating these losses, Applied only reported non-government income while, at the same time, it deducted all of its costs and expenses of doing business, both for government and non-government business. This methodology was adopted by the Plaintiff for his corporation in 1996, the year this action was started. Prior to this point, all income received was recorded by the corporation and deposited into the corporate checking account. In 1996, Applied instituted another change in its business practices. Instead of depositing all checks received from customers, the Plaintiff took all checks from the government to a private check cashing service. He personally cashed these checks, which over the four to five years totaled over $1,000,000, and has not accounted for these funds. This service cost the corporation and the Plaintiff, as owner of all its shares, between 1 to 2 percent, i.e., $10,000 to $20,000. The sole reason for this very expensive practice was to hide the existence of this income during these proceedings.
In 1995, Applied reported gross income in excess of $351,000. This was the sole source of funds available to the Plaintiff in 1995. This $351,000 included all receipts by the corporation, including all those from the Department of Defense. Revenue from the Department of Defense represented 67.1 percent of its total gross income. All expenses associated with the Department of Defense orders were reflected on the 1995 tax return. After expenses, sufficient cash remained to permit the Plaintiff to withdraw $256,992, which he characterized as repayment of loans. In addition, the Company paid substantial expenses for and on behalf of the Plaintiff. 1995 was the last year in which receipts from the Department of Defense were deposited into the Applied account.
From January 1, 1997 to the time of trial, Applied received approximately $1,160,000 from the Department of Defense. of this amount, $110,149.56 is being held in escrow pursuant to an interim order entered CT Page 11519 by the court during trial. Though requested, the Plaintiff failed to produce complete records for 1996, but the evidence introduced showed that earnings for 1996 would have been consistent with and substantially the same as the average earnings for 1995 and for the period of 1997 to present.
The Plaintiff earned and received at least $320,000 per year from 1995 forward from Applied. In addition, he took substantial additional unreported cash from the proceeds he received from the Defense Department checks he cashed. The total amount of these checks exceeded $1,100,000. The court concludes that the major portion, if not all of said sums, were not spent for Applied's business expenses, but rather remain in the Plaintiff's possession or under his control and accessible to him.
In addition to the funds which the Plaintiff received from his earnings and withdrawals from Applied, and the cash from the hidden government payments, the Plaintiff had available and used funds from other sources. Just prior to commencement of this action, between September, 1995 and April/May, 1996, the Plaintiff appropriated some $170,000 by way of withdrawals from Applied's bank account. Thereafter, on April 30, 1996, he converted $140,000 of these funds into cash which he hid in his safety deposit box. In addition, during the pendency of this action, the Plaintiff had and used at least an additional $106,000, $40,000 of which the Plaintiff's son had returned to him and which he had been given to invest for his parents, and $66,000 from the use of credit cards and by way of overdrafts.
The Plaintiff's future has some extremely bright prospects. Beginning in 1994, and thereafter during the marriage, he developed to the point of demonstrations to potential investors a new technology, the specifics of which the Plaintiff refused to reveal. The process related, in some way, to computerization of engineering processes. The Plaintiff was and is in the process of seeking venture capital in the amount of $10,000,000. A corporation has been formed, Teknowledgy Solutions On Line, Inc., Teknet, Inc. and/or Teknet. At the time of trial, the Plaintiff was still active and involved with efforts to raise capital to allow this venture to proceed.
The Defendant is sixty-four years of age and suffers from back pain and problems. She has a high school education but her earnings history is sparse. She is intelligent, capable of employment, and able to earn wages in excess of minimum wage. She is presently unemployed and receiving temporary alimony payments of $3,000 per month and $800 per month from a border in the marital residence. Her assets consist of her interest in the marital residence which was acquired from earnings of the Plaintiff during the marriage and that a portion of funds inherited from her father CT Page 11520 which remain after some use for children's education, living expenses, a car, legal fees and other permissible and reasonable expenditures.
Prior to the time the Plaintiff left the family residence, the parties had achieved a comfortable lifestyle. They owned the Skyview Drive residence and a vacation home in Vermont. The plaintiff also owned a DeLorean automobile and owned, and owns, an interest in an airplane. They educated four children through college, medical school, law school and a master's degree. Although this relationship was tired at the time of the breakdown, the primary cause of the breakdown was the Plaintiff's intolerable behavior and his dating of another woman.
During the course of this litigation, the Defendant has been forced to incur substantial attorney's fees and expenses as a result of the Plaintiff's failure to provide full and fair disclosure of financial information required by the rules of discovery and because of his concerted efforts to conceal his assets. The Defendant lacks funds to pay for these fees and expenses and it is more than probable that additional proceedings will be required to enforce the orders of the court.
The Court has carefully considered the criteria set forth in Connecticut General Statutes §§ 46b-62, 46b-81, 46b-82, and the applicable case law in reaching the decisions reflected in the orders that follows:
 ORDERS
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. Periodic Alimony: Plaintiff shall pay the Defendant the sum of $4,000 per month alimony until death or remarriage of the wife.
3. Lump Sum Alimony:
 a. Plaintiff shall pay to the Defendant, on or before October 15, 2000, as a single lump sum alimony payment, the sum of $300,000. The obligations herein constituting payments of alimony and/or lump sum alimony and/or division of assets shall constitute payment in the nature of alimony and support and shall be non-dischargeable, pursuant to 11 U.S. Code 523 (a)(15) as payments necessary for Defendant's maintenance and support. The court has considered all of the circumstances relating to the Defendant's needs and has concluded such payments as necessary alimony. CT Page 11521
 b. The court finds that the transfer of the 11 Skyview Drive, Stamford, Connecticut, property from David K. Hass to Hyman Hass and Barbara J. Hass dated April 16, 1995 by virtue of an unrecorded deed was a transfer made for the express purpose of effectuating a mere change in the identity of ownership and not a change of beneficial ownership. The Defendant is ordered to record said deed upon the judgment becoming final. The Plaintiff's interest in said property is hereby assigned to the Defendant. Pursuant to Connecticut General Statutes § 46b-81(a), the court orders that the assignment of the Plaintiff's interest in said real property shall pass to the Defendant by virtue of this judgment without any further act of the Plaintiff and the Defendant shall record this judgment upon the land records of the city of Stamford to effectuate the said transfer.
 c. The entire escrow account, presently held by Attorney Wechsler, is hereby declared to be the property of the Defendant, free and clear of any claims of the Plaintiff, and said funds shall be transferred immediately to the Defendant.
The Plaintiff, as 100 percent owner of the shares of Applied Magnetics, Inc., as director and as officer, shall take all actions necessary to accomplish and complete any and all corporate proceedings to ratify, authorize, approve and record said action so as to effectuate this order. The Court will retain jurisdiction to resolve any questions or issues connected with or related to these orders and to oversee and ensure compliance.
4. The following assets shall belong to the Defendant, free and clear of any claims by the Plaintiff:
 a. The remaining funds given to Brian Hass, the son of the Plaintiff and Defendant, prior to the separation of the parties, for investment purposes, which sums are estimated to be approximately $40,000.
 b. The funds held by April Gluckstern, daughter of Plaintiff and Defendant, being proceeds of insurance resulting from the DeLorean automobile loss, estimated to be $18,000.
CT Page 11522 These orders shall constitute payments in the nature of alimony and support, and shall be non-dischargeable, pursuant to 11 U.S. Code 523 (a)(15) as payments necessary for Defendant's maintenance and support. The court has considered all of the circumstances relating to the Defendant's needs and has concluded such payments as necessary as alimony.
5. The Defendant shall maintain her Quick Reilly account, the loan due from her daughter, Nancy Heinrich, her bank account at First County, and the 1993 Ford wagon and/or any proceeds therefrom. The Plaintiff shall forthwith transfer to the Defendant ownership of said 1993 Ford Taurus wagon and sign any and all documents to transfer the same in accordance with the requirements of the Connecticut Department of Motor Vehicles. Except as herein provided, the Plaintiff shall retain ownership of the motor vehicles shown on his Financial Affidavit dated July 20, 2000, subject to any loans thereon, but free and clear of any claim of the Defendant.
6. APPLIED MAGNETICS, INC.
The Plaintiff shall, forthwith, transfer to the Defendant 50 percent of his stock in Applied Magnetics, Inc. and to any successor entity if there be such. If the Plaintiff has heretofore transferred assets of Applied Magnetics, Inc. to himself, individually, or to any other entity in which he has any legal or equitable interest, Plaintiff shall transfer 50 percent ownership of the assets previously owned by Applied Magnetics, Inc., or any proceeds, in whatever form it or they may have taken or presently exist, be it cash, stock, note or any other form, received as a result of said transfer, including, but limited to the parts numbers, drawings, cage code #s, Duns #s and any other proprietary and intellectual property, which belonged to Applied Magnetics, Inc. or 50 percent of his interest in such new entity that owns those assets.
7. TEKNOWLEDGY SOLUTIONS ON LINE, INC
Plaintiff shall, forthwith, transfer to the Defendant 25 percent of his interest in Teknowledgy Solutions On Line, Inc.; Teknet, Inc. and Teknet (hereinafter referred to collectively as "Teknet") in whatever form of ownership it exists, said transfer to include, but not be limited to, the following: all trade names, trademarks, copyrights, computer software programs, patents, intellectual property rights, business plans, business models, and any other proprietary information utilized in the conceptual idea for the actual or potential business of "Teknet" and 25 percent of the proceeds he has or will receive from the sale of, or other business arrangement, involving these assets, including but not limited to royalties. The court shall retain jurisdiction to resolve any issues CT Page 11523 connected with or relating to these orders and to oversee and ensure compliance.
8. The following assets shall belong to the Plaintiff, free and clear of any claims of the Defendant:
 a. His bank account at HSBC having a balance of approximately $12,800.
 b. Subject to and subordinate to the assignment provided in Paragraph 12, the remaining portion of any non-disclosed liquid assets resulting from the Department of Defense orders.
 c. The furniture, jewelry, and airplane as shown on his Financial Affidavit dated July 20, 2000.
 d. The loan receivable from Applied Magnetics, Inc. in the approximate amount of $92,428.
9. Plaintiff shall be solely responsible for those liabilities set forth on his Financial Affidavit dated July 20, 2000, and he shall indemnify and hold the Defendant harmless therefrom. In addition, the Plaintiff shall, on or before October 15, 2000, pay the following:
 a. All past due real estate taxes (including the payment which was due on July 1, 2000) on the property at 11 Skyview Drive, Stamford, Connecticut, together with all interest penalties and lien fees; and,
 b. The Defendant's outstanding medical bills in the amount of $1,023.
10. Continuing Disclosure:
A. Plaintiff shall, every ninety days from the date of this decree, submit to the Defendant the following:
 i. A full and complete accounting of all gross receipts and expenses, together with documentary evidence of the same, from any business entity in which the Plaintiff has any beneficial interest, including but not limited to Applied Magnetics, Inc., Tecknowledgy Solutions On Line, Inc. and Teknet, Inc. and/or any business which is the successor to the business of said companies; CT Page 11524
 ii. A full and complete accounting of all receipts of money by the Plaintiff from any source during the prior ninety day period, together with an accounting of the expenditure of said money, with documentary evidence of such receipts and expenditures including, but not limited to, the name, address and account number of any financial accounts maintained by the Plaintiff including, but not limited to, bank accounts, broker accounts and money market accounts.
B. In addition, on or before April 15 of each year, the Plaintiff shall submit to the Defendant complete copies of his personal tax returns filed with each and every tax authority, and tax returns for each and every business entity in which the Plaintiff has a beneficial interest including, but not limited to, Applied Magnetics, Inc., Tecknowledgy Solutions On Line, Inc. and Tecknet, Inc. and/or any business which is the successor to the business of said companies. Said returns shall be certified as true and complete copies of the returns filed with such taxing authorities by the preparer of said returns.
In the event the Plaintiff shall file for an extension with regard of any of said returns, then the Plaintiff shall submit to the Defendant, within five days of the time any such extension request is filed, a copy of said request, and the Plaintiff shall also submit to the Defendant a copy of each and every return within seven days after the same is filed.
11. Counsel Fees: The Court finds that an enormous amount of time and effort was required to investigate the Plaintiff's finances and earnings because of the Plaintiff's outrageous behavior and efforts to conceal the same. As a result, the Defendant has incurred significant legal fees and expenses. The fees charged by counsel for the Defendant are more than reasonable in light of counsel's expertise and the quality of the services performed. The Plaintiff shall therefore pay to the Defendant, not later than October 31, 2000, the sum of $111,638, as counsel fees and expenses of this litigation.
12. Security for Payments:
In accordance with Connecticut General Statutes § 46b-82, the Court orders, by way of security for the above orders of lump sum alimony and attorney's fees, the following: as security for the payment of the lump sum alimony pursuant to Paragraph 4, attorney's fees in Paragraph 11, and liabilities as per paragraph 9, the Plaintiff shall take all steps necessary as sole shareholder of Applied Magnetics, Inc., and as officer and director of said corporation, to immediately assign to the Defendant CT Page 11525 any and all amounts owed to Applied Magnetics, Inc. by the United States of America, Department of Defense or any other department or agency thereof, for any reason including, but not limited to, work completed or in process of being completed supplies, parts or equipment. The Plaintiff shall immediately execute any document requested or required to effectuate this assignment and shall immediately forward notice of the assignment, this order, and these documents to the agency or department with whom or for whom it has worked. The Defendant shall also provide notice of the assignment. The Plaintiff shall also turn over to the Defendant any payments received by him and/or Applied Magnetics, Inc. from the United States of America for said items. This assignment shall continue until said sums have been paid in full, and thereafter shall be of no force and effect.
In addition, as security for the above orders of periodic alimony, the Plaintiff shall provide the Defendant, on or before October 15, 2000, a performance bond in the amount of $250,000 issued by an insurance company licensed to do business in the State of Connecticut providing that in the event of Plaintiff's failure to make said payments as ordered, said company will be responsible for and will pay the ordered amounts.
Hiller, J.